**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

EDDIE R. BRADSHAW,

           Plaintiff,

vs.

MICHAEL J. ASTRUE,[1]
Acting Commissioner,
Social Security Administration,

           Defendant.

Case No. 06-CV-76-FHM

**ORDER**

Plaintiff, Eddie R. Bradshaw, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[2] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,*

---

[1] Effective February 1,, 2007, pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue Commissioner of Social Security Administration, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Plaintiff's April 3, 2002, application for disability benefits was denied initially and on reconsideration. A hearing before Administrative Law Judge ("ALJ") Gene M. Kelly was held May 5, 2005. By decision dated June 24, 2005, the ALJ entered the findings that are the subject of this appeal. The Appeals Council affirmed the findings of the ALJ on December 14, 2005. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

26 F.3d 1027, 1028 (10th Cir. 1994).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991).  Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands.  *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

      Plaintiff was born January 19, 1952, and was 53 years old at the time of the hearing. He has a General Equivalency Diploma and formerly worked as furniture mover helper, construction laborer and shuttle driver.  He claims to have been unable to work since January 19, 2002, as a result of shortness of breath, chest pain, occasional dizziness and fast pulse pressure.  The ALJ determined that Plaintiff had the residual functional capacity to perform work at the light and sedentary levels of exertion, with some environmental limitations.  Further, he could stand or walk 6 hours of an 8-hour workday at 30 minute intervals, and could sit for 6 hours in an 8-hour workday at one hour intervals.  He was, however, slightly limited in his ability to perform fingering, feeling and grasping, and was limited to performing simple, routine and repetitive work tasks.

      Based on the testimony of a vocational expert, the ALJ determined that, although Plaintiff could not return to his past relevant work, there are a significant number of jobs in the national economy that Plaintiff could perform with these limitations.  The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant

is disabled. See Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

Plaintiff asserts that the ALJ's determination is not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ: (1) failed to perform a proper determination at steps 2 and 3 of the sequential evaluation process; (2) failed to perform a proper evaluation of the treating and examining physician's opinion; (3) failed to perform a proper credibility determination; and (4) failed to perform a proper determination at step 5 of the sequential evaluation process. The Court concludes that the record contains substantial evidence supporting the ALJ's denial of benefits in this case, and that the ALJ applied the correct standards in evaluating the evidence. Therefore the Commissioner's denial of benefits is AFFIRMED.

The time frame under consideration is from the amended date of onset, January 19, 2002, to June 30, 2002, the date last insured. As a preliminary matter, the Court notes that most of Plaintiff's allegations of error stem from the fact that the ALJ concentrated his analysis on the medical records that were generated during the relevant time frame. The ALJ did not discuss the medical evidence that was generated well after the end of the time frame. The ALJ did not discuss the consultative examinations dated September 15, 2003 (mental), [R. 334], and October 30, 2003 (physical), [R. 346], nor did he discuss a residual functional capacity (RFC) form completed in April 2005 by Plaintiff's treating physician. Plaintiff has not demonstrated that any of these later developed records pertain to the time frame at issue.

With regard to the treating physician, the Court rejects Plaintiff's assertion that the ALJ failed to perform a proper evaluation of a treating physician's opinion. Plaintiff is correct that the ALJ did not mention the opinion of Dr. Biddle. Dr. Biddle examined Plaintiff in April 2005, nearly three years after the expiration of Plaintiff's insured status. His statement that "[patient] feels limitations have existed since 2000" [R. 430] does not constitute a treating physician's opinion entitled to controlling weight under the Social Security regulations. 20 C.F.R. § 404.1527.

During the relevant period there were few medical records generated. They consist of a February 28, 2002, visit to Plaintiff's treating cardiologist and a May 20, 2002, consultative examination. The consultative examiner noted Plaintiff's history of an aortic valve replacement in 2000, gastric ulcer surgery in 1985, a right kidney stone in 1985 and an appendectomy in 1962. He also noted the history of a fracture of the left radius and ulna and left thumb. [R. 277]. The consultative examiner reported Plaintiff had a chronic lumbodorsal strain. He observed Plaintiff to have a normal gait to speed and stability and safety with dexterity of gross and fine manipulation and no joint deformities or swelling. [R. 279].

Plaintiff's treating cardiologist, Dr. Irvin saw Plaintiff for complaint of dyspnea (shortness of breath). [R. 275]. Dr. Irvin noted Plaintiff's "exercise pattern is described as following an active lifestyle." *Id.* He stated he planned to send Plaintiff to get a pulmonary function test and chest x-ray and to have Plaintiff follow up in a year unless something in the tests is markedly abnormal. [R. 276]. The record contains no further follow-up.

The Court rejects Plaintiff's assertion that the case should be remanded because the ALJ failed to discuss the specific requirements of the Listings he considered. The ALJ

identified the Listings he considered and Plaintiff has not shown that the medical evidence could even arguably be interpreted as meeting the requirements of any Listing.

The Court finds the ALJ adequately explained the basis for his credibility determination, and the reasons are supported in the record. The ALJ accurately recounted Plaintiff's testimony that he could sit for an hour, stand for half an hour, walk 20 minutes, and could lift and carry 20 pounds. [R. 490]. The ALJ's residual functional capacity finding nearly matched Plaintiff's own statement of his abilities. The ALJ found Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk 6 hours of an 8 hour day at 30 minute intervals; and sit for six hours of an 8 hour day at one hour intervals. [R. 19]. As demonstrated by Dr. Irvin's records, the ALJ also accurately noted that the medical evidence during the relevant time frame shows that Plaintiff retained the stamina for a grossly normal, physically active lifestyle. [R. 20]. The Court finds that the ALJ largely accepted Plaintiff's statement of what activities he could perform. Nothing more was required of the ALJ for an acceptable credibility analysis.

The transcript of the hearing before the ALJ contains a number of inaudible responses. Plaintiff argues that anything within the ALJ's decision having to do with the hearing testimony cannot be supported by substantial evidence because of the faulty transcript. As previously discussed, the ALJ credited most of Plaintiff's description of what he could do. The Court notes that testimony was not marked inaudible on the transcript.

Plaintiff argues the case should be remanded because the ALJ failed to include in his hypothetical questioning to the vocational expert limitations included in a mental consultative examination performed in September 2003. The Court finds no error because that examination took place well outside the relevant time period, which ended June 30,

5

2002. *Hargis v. Sullivan,* 945 F.2d 1482, 1492 (10th Cir. 1991) provides that "testimony elicited by hypothetical questions that do not relate with precision all the claimants' impairments cannot constitute substantial evidence to support the Secretary's decision." However, in posing a hypothetical question, an ALJ need only set forth those physical and mental impairments which are accepted as true by the ALJ.  See *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990).  The Court finds the ALJ's hypothetical properly set forth impairments which were accepted as true by the ALJ and which are supported by the record pertaining to the relevant time frame.

Plaintiff argues that according to the *Dictionary of Occupational Titles* (U.S. Dept. of Labor 4th ed. 1991)(DOT), the jobs identified by the vocational expert are inconsistent with the limitations in the hypothetical question posed by the ALJ.  Plaintiff argues that the paper pattern folder job (DOT # 794.687-034) exceeds his abilities in term of the noise environment and the ability to grip.  The job of paper pattern folder is performed in a moderate noise environment whereas the ALJ limited Plaintiff to a low noise environment. The ALJ qualified the low noise limitation, as follows:

> I'm not attempting to restrict [INAUDIBLE] ordinary noise environments of business commercial type establishments; but if he's going to work on a foundry floor or out – whether he's just working on an airline flight line or something like that – I want to restrict that.

[R. 503]. The ALJ also found Plaintiff had a "slight limitation" in finger feel and grip," which he qualified as follows:

> A slight limitation in finger, feel, and grip.  Now, so that you have an idea what I'm considering here, I'm not saying he can't use his hands and fingers to work with. [INAUDIBLE] from being fully – I don't see this person being able to work with

6

>   small training things.  He can put his kid's bicycle together, but
>   he may not be able to work with his kid's erector set.

*Id*.  Having listened to the limitations and the qualifications, the vocational expert identified paper pattern folder as one among the unskilled light work fitting the limitations in the hypothetical question. [R. 505].  Nothing on the face of the DOT listing for that job is inconsistent with the ALJ's hypothetical question.

Plaintiff also argues that his limitation to the performance of simple, repetitive and routine work eliminates the job of ticket taker because that job requires a reasoning level of 2, which he claims exceeds his abilities.  Reasoning level 2 is one of 6 levels of reasoning development that are assigned to jobs in the DOT.  Level 1 is the lowest level and 6 is the highest.  Level 2 requires the ability to: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions." DOT; Appendix C, p. 1011. The Court disagrees that reasoning level 2 is precluded by the ALJ's findings.

The reasoning development level in the DOT addresses the degree of analytical problem solving required by a job.  A designation that a job involves carrying out detailed, but uninvolved instructions indicates that every step of the process is defined, but that the process is fairly simple, ie. uninvolved.  Nothing about that circumstance is inconsistent with the ALJ's findings.  The case cited by Plaintiff in support of his argument concerning the reasoning level, *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) does not support remand in this case.  In *Hackett*, the Court remanded the case because there was a conflict between the Plaintiff's ability and the level 3 reasoning required by the jobs identified.   In that case the ALJ found:   "Mentally, [Plaintiff] retains the attention, concentration, persistence and pace levels required for simple and routine work tasks." *Id*.

The Court found that residual functional capacity was not consistent with jobs having a level 3 reasoning requirement but noted that a level 2 reasoning appeared to be consistent with the residual functional capacity finding.  *Id.*

The Court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts.  The Court further finds there is substantial evidence in the record to support the ALJ's decision.  Accordingly, the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED

SO ORDERED this 30th day of March, 2007.

*Frank H. McCarthy*
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE